STATE of Wisconsin, Plaintiff-Appellant,

v.

Paul KRUSE, Defendant-Respondent.

Court of Appeals

*No. 92-2296-CR. Submitted on briefs February 2, 1993. Oral argument February 2, 1993.—Decided March 2, 1993.*

(Also reported in 499 N.W.2d 185.)

89

For the plaintiff-appellant the cause was submitted on the briefs of *James E. Doyle,* attorney general and *Marguerite M. Moeller,* assistant attorney general.

For the defendant-respondent the cause was submitted on the brief of *Steven P. Weiss,* assistant state public defender, Madison.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. The state appeals an order suppressing evidence seized as a result of a warrantless search of Paul Kruse's bedroom closet and a second search pursuant to a search warrant based upon the fruits of the first search. The state contends that the trial court erred by concluding that the initial search violated Kruse's constitutional right to be free from unreasonable searches and seizures. The state argues that the search of Kruse's bedroom closet was a valid protective sweep conducted incident to Kruse's lawful arrest or, in the alternative, the officers' reasonable suspicion that their safety may be in danger justified a protective search of the premises for dangerous persons. The state asserts that because under either of these theories the search was valid, the marijuana discovered in the bedroom closet is admissible and the second search was not the product of a prior illegal search. Because we conclude that the initial search was neither a protective sweep of the area immediately sur-

rounding the arrest nor a search for dangerous persons justified by a reasonable suspicion that the officers were in danger, we conclude that the initial search was invalid and its fruits were properly suppressed. Because the warrant authorizing the second search was based on the fruits of the illegal search, evidence obtained during that search was likewise properly suppressed. We therefore affirm the trial court's suppression order.

The Prairie du Chien police department received a complaint that Kruse had threatened the lives of the complainant and a bartender and that he may be carrying a .357 magnum handgun. The police entered Kruse's name in their computer and discovered that he was wanted in Florida on a felony burglary warrant. The police then proceeded to Kruse's apartment to arrest him on the Florida warrant and to discuss the complaint they had received regarding the alleged life-threats he made.

Kruse shared the one-bedroom apartment with a woman. Police Chief Gary Knickerbocker, Detective Gerald Ostrander and DNR Warden Dennis Kirschbaum rang the doorbell, knocked several times on the front door and waited for Kruse to open the door. Approximately five minutes later Knickerbocker saw a curtain move and heard mumbling inside the apartment. When Kruse opened the door he appeared disheveled, as though he had just awakened.

Kruse invited the police into the living room, which is immediately inside the front door, identified himself and was arrested and placed into custody. Knickerbocker seated Kruse on the couch in the living room, handcuffed him and read him his rights. Meanwhile, Ostrander searched the rest of the apartment by going across the living room from where Kruse was seated, going down the hallway, looking into the bathroom at

the end of the hallway and going around the corner into the bedroom. Ostrander opened the bedroom closet door and discovered a large plastic bag containing what he believed was marijuana. He seized the bag and informed Knickerbocker and Kirschbaum what he had found. After the police removed Kruse from the apartment, but before obtaining a search warrant, Ostrander went back in and continued searching the apartment.

Based on tests revealing that the substance inside the seized bag was marijuana, Ostrander obtained a search warrant and returned to Kruse's apartment that afternoon. During this search, Ostrander seized two more bags of marijuana, drug paraphernalia and drug residue. No gun was found in the apartment.

Kruse was charged with possession of a controlled substance with intent to deliver, contrary to secs. 161.41(1m)(h) and 939.05, Stats., and with failure to pay the required tax on a controlled substance, contrary to secs. 139.88, 139.89 and 939.05, Stats. Kruse subsequently moved the trial court to suppress all of the evidence obtained from both searches of his apartment.

The trial court made the following findings: (1) Kruse was cooperative, never presented any threat or resistance to the officers and did not exhibit any conduct that would have reasonably caused the officers to fear for their safety; (2) Kruse was immediately arrested and handcuffed in his living room; (3) Ostrander conducted a browsing search through the apartment and specifically in Kruse's bedroom closet; (4) the officers did not conduct a protective search of the area surrounding Kruse or of the living room, either for weapons or dangerous persons; (5) the officers continued searching the apartment after Kruse was removed from the apartment; (6) the officers' behavior was not indicative of fear or concern for their safety; and (7) the court found that the officers

93

failed to demonstrate that they had a reasonable belief based upon specific and articulable facts that an individual who endangered their safety was hiding in the apartment. Based upon these findings, the trial court concluded that the initial search was constitutionally infirm and the search warrant was issued based on evidence obtained from that search. The court ordered suppression of all the evidence seized as a result of the unconstitutional searches.

The state moved the trial court to reconsider its decision to suppress and to allow the state to present further evidence regarding the location of the bedroom and the bedroom closet. The court granted the motion to reconsider but denied the motion to allow the state to present further evidence, although the court did allow an offer of proof concerning the dimensions of the apartment. Upon reconsideration, the court affirmed its prior decision.[1]

In reviewing an order suppressing evidence, we will uphold the trial court's findings of evidentiary or historical fact unless they are against the great weight and clear preponderance of the evidence. *State v. Murdock*, 155 Wis. 2d 217, 225, 455 N.W.2d 619, 621 (1990). A trial court's application of constitutional principles to the facts of a case is subject to independent appellate review. *State v. Seyferth*, 134 Wis. 2d 354, 358, 397 N.W.2d 666, 668 (Ct. App. 1986). Whether the initial warrantless search of Kruse's bedroom closet was reasonable and

---

[1] The state contends that the court erroneously exercised its discretion by granting a motion to reconsider but disallowing the presentation of additional evidence. Because the state cites no legal authority supporting its contention, we do not consider it. *State v. Shaffer*, 96 Wis. 2d 531, 545-46, 292 N.W.2d 370, 378 (Ct. App. 1980).

complied with the requirements of the fourth amendment to the United States Constitution is a question of constitutional fact that we review as a question of law independently of the trial court's conclusions. *See Murdock*, 155 Wis. 2d at 226, 455 N.W.2d at 621.

The state argues that the warrantless search of Kruse's apartment is justified on either one of two grounds authorized in *Maryland v. Buie*, 494 U.S. 325, 110 S.Ct. 1093 (1990). The state first contends that the search of the apartment was a precautionary search of "closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched," which can be conducted without probable cause or a reasonable suspicion. *Id.* at 334, 110 S.Ct. at 1098. Such a search "is a quick and limited search of a premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." *Id.* at 327, 110 S.Ct. at 1094. We conclude that the bedroom closet was not in the vicinity of the place of arrest and therefore not subject to a *Buie* protective search without reasonable suspicion.

*Buie* held that the basement search in that case was not permissible as a precautionary search of spaces immediately adjoining the place of arrest. *Id.* at 327, 110 S.Ct. at 1095. The police had entered Buie's house to execute an arrest warrant. After the police called out his name and announced their presence, Buie came up a stairwell out of the basement. He was immediately arrested and handcuffed. Thereafter, an officer went down the stairs and entered the basement "in case there was someone else" down there. In the basement, he saw a red running suit matching the description of the cloth-

ing one of two armed robbers had worn lying in plain view and seized it. The United States Supreme Court vacated the trial court's order denying suppression of the running suit and concluded that the basement search would be justified only if the officer had a reasonable suspicion that the basement harbored an individual posing a danger to the officers. *Id.* at 329, 110 S.Ct. at 1095. We conclude that because Kruse's bedroom closet was even more remote from the area where Kruse was arrested than the basement in *Buie, Buie* compels the conclusion that Ostrander's search of Kruse's bedroom closet could be justified only if the officers had a reasonable suspicion that it harbored a dangerous individual.

The state points to *United States v. Robinson,* 775 F.Supp. 231 (N.D. Ill. 1991), to support its contention that Kruse's bedroom closet was an area immediately adjoining the area where Kruse was arrested. However, *Robinson* is distinguishable. In *Robinson,* the defendant challenged the warrantless search of a locked bedroom. The defendant was arrested in a hallway several feet from the bedroom, which was off the same hallway. Thus, the bedroom in *Robinson* immediately adjoined the area where the defendant was arrested and was an area from which an attack could immediately be launched. Here, the trial court found that to get from the area where Kruse was arrested to the bedroom, one has to walk across the living room, go down a hallway and around a corner. To get to the bedroom closet, one must walk a few feet into the bedroom and turn a second corner. The closet is along the same wall as the bedroom door in the far corner. We conclude that the search of a bedroom closet that is separated by a wall and is down the hall and around the corner approximately eighteen feet from the arrest area is too remote to be subject to a

precautionary search without reasonable suspicion. Therefore, consistent with *Buie*, such a search is not authorized as a precautionary sweep of adjoining areas, and the police must have a reasonable suspicion based on articulable facts that the basement harbored an individual posing a danger to the officers.

██ The state next contends that the officers had a reasonable suspicion that Kruse's bedroom closet harbored an individual posing a danger to them that justified a protective search of the closet. The burden is on the state to demonstrate that there existed articulable facts that "would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing danger to those on the arrest scene." *Id.* at 334, 110 S.Ct. at 1098.

The state asserts that the police were advised that Kruse had made threatening statements referring to a .357 magnum handgun to others in a bar. The police also knew that Kruse was wanted in Florida for burglary. Finally, the police knew that a woman also rented the apartment and they did not see her at the time of the arrest. The state contends that this information, coupled with the inference that the woman may have access to the handgun and be willing to use it to prevent Kruse's apprehension, justifies the belief that a search of the apartment for the missing woman was necessary to protect their safety. We do not agree.

The police had no information that the woman had engaged in any threatening or illegal activity, was armed or would engage in violent conduct. She was not charged with any offense, and there was no evidence that she had threatened anyone. Further, there was no evidence concerning the extent of her relationship with Kruse, and the officers had no information that would reasonably

lead them to believe that she would be willing to use deadly force to prevent Kruse's arrest. The mere fact that the police had reasonable information that a woman lived in the apartment with Kruse, without more, is insufficient to create a reasonable suspicion that their safety was endangered.

Also, the officers did not testify that they feared for their safety, but that they routinely "secure" other rooms incident to a felony arrest, regardless of whether they have information that weapons or other persons are present in the home. The trial court found that the officers' conduct was not indicative of a reasonable fear for their safety. They browsed through the apartment without their weapons drawn and without first searching the area within Kruse's immediate reach. We conclude that the state has failed to demonstrate that the officers had a reasonable suspicion based on articulable facts that Kruse's bedroom closet harbored an individual who threatened their safety.

The trial court found that the search warrant authorizing the second search of Kruse's apartment was obtained based on the marijuana seized during the initial warrantless search of Kruse's bedroom closet. The state does not challenge this finding, and the record supports it. Therefore, we conclude that the evidence seized during the second search is a fruit of the initial illegal search. Based on our conclusions that the initial search violated Kruse's constitutional right to be free from unreasonable searches and seizures and the authorization for the second search was based solely on the illegal fruits obtained during the initial search, we conclude that the evidence from both searches was properly suppressed. *See State v. Verkuylen,* 120 Wis. 2d 59, 61, 352 N.W.2d 668, 669 (Ct. App. 1984).

*By the Court.*—Order affirmed.