701 So.2d 1182 (1997)
Clifford RUNGE, Appellant,
v.
STATE of Florida, Appellee.
No. 96-01740.
District Court of Appeal of Florida, Second District.
October 29, 1997.
*1183 James Marion Moorman, Public Defender, and John S. Lynch, Assistant Public Defender, Bartow, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Michael J. Scionti, Assistant Attorney General, Tampa, for Appellee.
ALTENBERND, Judge.
Clifford Runge appeals his convictions for grand theft (auto), possession of a vehicle with an altered identification number, felon in possession of a firearm, misdemeanor possession of marijuana, and resisting an officer without violence. He contends the trial court erred in denying his motion to suppress, and in imposing costs. We affirm all convictions except felonious possession of a firearm. At the suppression hearing, the State failed to prove that the search was a "precautionary sweep" of the space immediately adjoining the place where Mr. Runge was arrested, or that the detectives had an articulable basis for a broader "protective sweep," as explained in Maryland v. Buie, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990).
On December 1, 1995, two police officers received an anonymous crime stoppers' tip that there was a stolen black Toyota truck in the parking lot of an apartment complex. The tipster stated that a man named "Cliff" had been driving the truck. The officers went to the apartment complex and located the stolen truck. By interview ing neighbors, they determined that a man named "Cliff" lived in a specific apartment and had been seen driving the truck. The officers went to that apartment to question the occupant concerning the stolen truck. Clifford Runge answered the door. Events at the entrance to the apartment led to his arrest for resisting an officer without violence. After he was arrested, he was placed in a chair in the living room, and handcuffed. One of the officers immediately performed a "protective sweep," looking in the bedrooms, closets, and bathrooms for possible additional occupants. During this sweep, he found two shotguns in unspecified locations in the bedrooms or closets. The officer did not testify that the weapons were in plain view. He admitted that before entering the apartment, he had no indication that there were weapons inside. The record does not indicate that the officers asked the neighbors, the apartment manager, or even Mr. Runge whether someone else lived in the apartment.
After reviewing the officers' testimony at the suppression hearings, we conclude that their conduct in arresting Mr. Runge did not violate his Fourth Amendment rights. We conclude, however, that the search of the apartment was impermissibly broad.
In Buie, the Supreme Court held that police officers making an in-home arrest may as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.
Id. at 334, 110 S.Ct. at 1098. Thus Buie recognized two types of searches pursuant to an in-home arrest. The initial "precautionary sweep" without reasonable suspicion extends only to the immediately adjoining spaces, including closets, in which a person could hide. The latter and broader "protective sweep," based on articulable facts, is "not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found." Id. at 335, 110 S.Ct. at 1099.
The only Florida case we have discovered that applies Buie to similar facts is Dortch v. State, 642 So.2d 652 (Fla. 1st DCA 1994). In that case, two deputies went to the defendant's *1184 apartment to execute a warrant for his arrest in connection with a drug transaction at the apartment. One deputy went to the back door, while the other stayed at the front door. The deputy who went to the back door observed the defendant looking through the front door peep hole. The defendant then went to the center of the apartment and, within twenty to thirty seconds, back to the front door, which he opened. The front-door deputy instructed the defendant to open the back door for the other deputy. One deputy "secured" the defendant by placing him on "the counter," while the other "went and cleared the apartment." The deputy did not find anyone else in the apartment but did find marijuana inside a baggie under a baseball hat on a dresser in a bedroom. While continuing to "clear the apartment for other persons," the deputy searched what appeared to be a child's room, and found a paper bag containing baggies, cocaine, and a scale that he thought was used to weigh drugs. Id. at 653.
In a terse analysis, the First District stated: On appeal, appellant argues that when arresting a suspect, an officer may look in closets and other spaces immediately adjoining the suspect from which an attack could be launched; however, the search of any other area incident to the arrest requires specific and articulable facts which reasonably warrant the belief that the area to be swept harbors an individual posing a danger to those on the scene, citing Maryland v. Buie, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). Appellant directs us to the applicable rule of law. Having reviewed the testimony, we agree that the state failed to produce evidence sufficient to satisfy the standard articulated in Maryland v. Buie. Therefore, the trial court erred in denying appellant's motion to suppress the evidence against him.
642 So.2d at 653 (footnote omitted). It is not clear from the First District's opinion whether it concluded that: (1) the sweep of the rooms was "precautionary" and exceeded the scope of "spaces immediately adjoining the place of the arrest," or (2) the sweep was "protective," but without articulated facts that would "warrant a reasonably prudent officer to believe that the area to be swept harbors an individual posing a danger to those on the arrest scene," or (3) it was a permissible protective sweep which simply exceeded the scope of "a cursory inspection of those spaces where a person may be found." Buie, 494 U.S. at 334, 335, 110 S.Ct. at 1098, 1099. Certainly a baseball cap on a dresser or a paper bag would not harbor a dangerous individual.
Upon reviewing decisions of other courts which have addressed whether a search of an apartment incident to an in-home arrest qualifies as a Buie precautionary sweep, it is apparent that such a search is strictly limited to looking "in closets and other spaces immediately adjoining the place of arrest." For example, in United States v. Harris, 629 A.2d 481 (D.C.App.1993), the court held the search of the defendant's bedroom was a proper precautionary sweep because the police encountered the defendant as he left the bedroom, which opened directly onto the hall where he was arrested. The court concluded that the Buie precautionary search of areas within the immediate area of the arrest included "rooms that are directly adjacent to the place of arrest." Id. at 494 and n. 15.
In United States v. Ford, 56 F.3d 265 (D.C.Cir.1995), the court held that an officer executing an arrest warrant in an apartment was within the scope of the Buie precautionary sweep when he looked into the bedroom from which the defendant emerged just prior to his arrest in the hallway. The court also held that the Buie protective sweep is "very circumscribed" and did not permit the officer to look under a mattress or behind window shades. Id. at 270.
On the other hand, in United States v. James, 40 F.3d 850 (7th Cir.1994), modified on other grounds, 79 F.3d 553 (7th Cir.1996), the court held that an officer's search of a closet in the bedroom from which the defendant emerged immediately prior to his arrest was valid under Buie, particularly because a.44 semiautomatic rifle had been found propped up against a wall in the bedroom. In James, the Seventh Circuit also held that the search of a jacket inside the bedroom closet was valid under Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 *1185 S.Ct. 1642, 18 L.Ed.2d 782 (1967), because of the number of suspects involved in the raid, the number of weapons and amount of drugs that had been found, and the escalating danger of the situation. 40 F.3d at 863.
In State v. Kruse, 175 Wis.2d 89, 499 N.W.2d 185 (App.1993), the court affirmed the suppression of evidence found in a bedroom closet that was approximately eighteen feet and around a corner from the living room of the apartment where the defendant was arrested and handcuffed. The Wisconsin court held that the closet was too remote to be subject to a precautionary search.
At the hearing on Mr. Runge's motion to suppress, the State presented no evidence to support a precautionary sweep of the bedrooms, closets, and bathroom. There is no testimony about the size of this apartment, or the location of these rooms. There is no evidence that these rooms were adjacent to or near the living room where Mr. Runge was arrested and handcuffed. Because the State failed to meet its burden to justify the warrantless precautionary sweep of Mr. Runge's apartment, we cannot uphold the search on that basis.
The question remains whether the search of the rest of Mr. Runge's apartment can be justified as a Buie protective sweep. To support such a search, the police officer must articulate facts sufficient to warrant a reasonable belief that the apartment harbored dangerous individuals.
In Kruse once the court determined that the search could not be justified as a precautionary sweep, it considered whether the search might still be valid as a protective sweep for dangerous individuals. The state justified the sweep on the basis of the officers' knowledge that Kruse had made threatening remarks in a bar and had referred to a.357 magnum handgun. The officers also knew that Kruse was wanted for burglary in Florida. Finally, the state contended the officers knew that a woman shared the apartment with Kruse, and her location was unknown at the time of his arrest.
The Kruse court held this evidence was insufficient to prove the officers had articulable facts upon which to reasonably believe the apartment harbored dangerous individuals. The officers possessed no information that the woman who shared the apartment with Kruse was armed or dangerous, or that she would use deadly force to prevent Kruse's arrest. The court's decision was further buttressed by the officers' testimony "that they routinely `secure' other rooms incident to a felony arrest." 499 N.W.2d at 189. Finally, the officers' conduct in browsing through the apartment without their weapons drawn, and without first searching the area immediately within Kruse's reach did not indicate that the officers feared for their safety. Id.
Similarly, the Ford court held that the search of the mattress and window sill in the adjoining bedroom could not be justified as a Buie protective search because the officers did not have a specific and articulable basis to believe that the adjoining bedroom harbored dangerous individuals. The court rejected the government's contention that Ford's prior arrests and current murder charge supported the protective search because his alleged dangerousness did not justify an expanded search once Ford was taken into custody. The court also found unpersuasive the government's rationale that, because the warrant alleged that Ford had other accomplices, there could be others in the apartment. Ford's crime had been committed seven months prior to his arrest and there was no indication that any accomplices were in the apartment. 56 F.3d at 269.
The Court of Appeals of Alaska reversed the denial of a motion to suppress evidence found during a protective sweep of the apartment in which the defendant was arrested for disorderly conduct. See Earley v. State, 789 P.2d 374 (Alaska.Ct.App.1990). As the officers arrested Earley at the threshold of his apartment, they saw another man walk across the doorway and out of sight. They also saw two small children sleeping in the living room. The other man then came into the living room. The officers suspected he was intoxicated. They then searched the whole apartment "ostensibly to ensure that no one was present who could endanger them" while they determined if the intoxicated man was capable of taking care of the *1186 sleeping children. Id. at 377. The court held these facts did not warrant a reasonable belief that there could be a dangerous person in the kitchen, upstairs bedroom, and garage. Id. Cf. United States v. Mains, 33 F.3d 1222 (10th Cir.1994) (holding search of closet in bedroom where defendant was arrested was valid precautionary sweep, and search of bathroom was valid protective sweep to look for dangerous individual where police had information that dangerous individual was also in apartment).
In this case, Detective Brock testified that he checked the bedrooms, the bathrooms, and the closets "for our safety. Just to make sure no one else was in the apartment." The detective's reason for conducting the protective sweep was not based on "specific and articulable facts" that could have given him a "reasonable belief" that the area searched "harbor[ed] an individual posing a danger to those at the arrest scene." Buie, 494 U.S. at 337, 110 S.Ct. at 1099-1100. Additionally, our review of the detectives' testimony does not reveal any facts supporting a reasonable belief that there was a dangerous individual in the apartment. While one officer searched the remainder of the apartment for dangerous individuals, the other officer interrogated Mr. Runge, who was handcuffed in the living room. The questioning concerned the ownership of the stolen truck, not whether there were others in the apartment. This conduct is not consistent with concern for safety. There was no testimony that the officers' assessment focused on "the particular configuration of the dwelling," i.e., whether there were readily available spaces in which a person could hide, or "the characteristics of those known to be present and who might be present." United States v. Burrows, 48 F.3d 1011, 1016 (7th Cir.), cert. denied, 515 U.S. 1168, 115 S.Ct. 2632, 132 L.Ed.2d 872 (1995).
We are not unmindful of the dangers police face daily while performing their duties. See People v. Quick, 57 Cal.App.4th 1426, 1436-37, 67 Cal.Rptr.2d 751 (Cal.Ct.App.1997) (Rylaarsdam, J., dissenting). Our paramount duty in cases such as this, however, is to determine whether the facts presented demonstrate that concern for officer safety justifies an exception to the Fourth Amendment right to be secure in one's home against unreasonable warrantless searches. We are compelled to conclude that the officer's warrantless protective sweep search of the bedrooms, bathroom and closet, "[j]ust to make sure no one else was in the apartment[,]" without a specific factual basis that dangerous individuals were in the apartment violates that right.
Accordingly, we reverse that part of the trial court's order denying suppression of the shotguns found as a result of this warrantless search, and remand the case with directions to vacate the conviction for felonious possession of a firearm. Because the seizure of the evidence supporting the other charges was valid, we affirm Mr. Runge's remaining convictions.
Finally, we strike the discretionary $2 cost. See Reyes v. State, 655 So.2d 111 (Fla. 2d DCA 1995) (en banc).
Affirmed in part, reversed in part, and remanded with directions.
THREADGILL, A.C.J., and LAZZARA, J., concur.