RAMIREZ, J.
(dissenting).
I respectfully dissent. As this was a warrantless search, the State had the burden of showing that the search came within one of the recognized exceptions to the warrant requirement. See Raffield v. State, 351 So.2d 945, 947 (Fla.1977). Additionally, the trial court’s decision is entitled to a presumption of correctness and we should not substitute" our judgment for that of a trial court, but, rather, should defer to the fact finder. See Perez v. State, 536 So.2d 359, 360 (Fla. 3d DCA 1988); Wasko v. State, 505 So.2d 1314, 1316 (Fla.1987). Given these two principles, I would affirm the well-reasoned conclusion of the trial court to suppress the evidence.
The majority minimizes the discrepancies in the testimony of the officers, attempts to reconcile them, then concludes that under either version, the State should prevail. This usurps the fact-finding role of the trial court and substitutes our judgment for that of the trial court judge.
Officer Roig testified as to what he perceived to be a burglary in progress which provided exigent circumstances to make a warrantless entry inside the business. He claimed to have observed pry marks on the door of the business. No one else corroborated these pry marks. In fact, the trial court found that the photographs taken of the scene did not show any pry marks.[2] *379 Officer Roig testified that he knocked on the door to the business, but did not hear any answer, so he opened the door and saw Fernandez coming down the stairs while saying: “[i]t is okay. It is okay. I am the owner.” The officer shined his flashlight and was able to see several people upstairs. He heard music coming from the second floor.[3] Officer Rodriguez then pointed out a small coffee table at the entrance and asked Fernandez, “[s]o you are the owner,” to which Fernandez said nothing.
Officer Roig then ordered all the occupants outside while Officer Rodriguez took Fernandez into custody. Six individuals came down, two or three of whom escaped. Officer Roig conducted a security sweep, checking the entire warehouse, and observed a suspect substance in the room upstairs where he had seen the other individuals.
In marked contrast, Officer Rodriguez testified that Fernandez’s arrest was based on a consensual encounter in which suspect narcotics were observed in plain view. He testified that after speaking with the female occupant of the vehicle, the two officers approached the warehouse and Officer Roig knocked on the door. At that point, he realized that the female was getting out of the car. He ordered her to remain in the car. This only took a moment. He did not see any pry marks. The excuse for not seeing any pry marks was that the door was already open when Officer Rodriguez approached, the same excuse the trial court evidently rejected,[4] but which the majority unabashedly adopts.
Officer Rodriguez assumed that Fernandez had opened the door because he next saw him standing in the doorway speaking to Officer Roig. While they talked, he “noticed that there was a coffee table, a small coffee table approximately six feet away from the door, and on top of the coffee table there was a clear plastic bag that appeared to have multiple bags that contained suspect cocaine.” He had no trouble seeing inside the business as the lights were on. There was no need to use a flashlight. He testified that he asked Fernandez if the business was his and Fernandez answered yes. He then asked Fernandez whether the property on the coffee table was his, to which Fernandez shrugged his shoulders. The officer interpreted that as an admission and arrested him.
In its memorandum of law to the trial court, the State recognized that the critical issue was the credibility of the officers. The majority opinion, the State’s forty-eight page brief, and this dissent have all concentrated on the factual testimony that was presented to the trial court and whether the testimony of the two officers can be reconciled. The trial court decided that they could not be reconciled. In its order granting the motion to suppress, the trial court stated that without knowing which version of the diametrically opposed facts to believe, it was finding that the State had not met its burden to support the warrantless entry into the business. This was a diplomatic way of saying that the officers were lying to justify the initial entry into the business.
*380 The majority opinion shifts the burden to Fernandez by stating that there was “no testimony offered by any witness to support a scenario that would have rendered the search illegal.” The only other witness to the initial entry was Fernandez, who had a right to remain silent. The majority seems to make an inference from his silence. . Presented with the two contradictory factual versions from the officers, the trial court had the discretion to reject them both.
If this argument fails, the majority then states that the versions were not really contradictory at all, rejecting the fact-finder’s explicit rejection of this argument. The pry marks evidence is not the only point of contradiction. The officers could not agree on who opened the door, what were the lighting conditions, whether they heard music, and where Fernandez was standing during the initial conversation.
Further, the trial court did not abuse its discretion in finding that the subsequent protective sweep of the second floor of Fernandez’s business was illegal as it was based on the illegal arrest. The protective sweep was an illegal search and seizure as the officers did not testify that there were any objective factors to indicate that any of the individuals inside the business were acting in an aggressive or threatening manner, or that any of the individuals inside were armed. See Runge v. State, 701 So.2d 1182, 1183 (Fla. 2d DCA 1997) (holding that while the police may search spaces immediately adjoining the place of defendant’s arrest, beyond that, “there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.”).
As to the consent to search form which Fernandez signed, the trial court did not abuse its discretion in holding that the State failed to prove by clear and convincing evidence that there was an unequivocal break in the chain of illegal police conduct sufficient to dissipate the taint of the prior illegal police action. The illegal police conduct effectively rendered Fernandez’s consent to search involuntary.

. The majority recognizes the discrepancy with Officer Rodriguez’s testimony of no pry *379 marks by observing that the door was already open when Officer Rodriguez approached, but the officers were at the scene for over one hour and no one else could corroborate this important piece of information.

. Officer Roig could not remember if he heard the music before or after he opened the warehouse door.

. The officer was impeached with his deposition on this subject.