# COURT OF APPEALS
## DECISION
## DATED AND FILED

## October 22, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2018AP1831-CR**

Cir. Ct. No. **2017CF2068**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

DOMENIKO E. MARTIN,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Milwaukee County: FREDERICK C. ROSA, Judge. *Affirmed*.

Before Brash, P.J., Kessler and Dugan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  Domeniko E. Martin appeals a judgment entered after he pled guilty to possession with intent to deliver heroin.  He claims that the circuit court wrongly denied his suppression motion.  We affirm.

## BACKGROUND

¶2    The State charged Martin with one count of felony bail jumping and one count of possession with intent to deliver more than ten grams but less than fifty grams of heroin as a second or subsequent offense.  Martin moved to suppress the evidence that police found in his home when he was arrested, and the matter proceeded to an evidentiary hearing.

¶3    The testimony and video recordings presented at the hearing reflected that on April 26, 2017, law enforcement officers, including both Milwaukee police and United States marshals, went to an apartment complex in Milwaukee, Wisconsin to execute an arrest warrant for Martin.  A perimeter team, which included an officer wearing a body camera, secured the exterior of the building.  An entry team, which also included an officer wearing a body camera, entered the building.

¶4    Martin's apartment was on the second floor of the complex.  Officers knocked on the door and announced their presence.  A woman later identified as Dominique Berg verbally responded to the officers without immediately opening the door.  Meanwhile, an officer on the perimeter team radioed an alert that a person in the apartment appeared to be opening a window.  The entry team believed that Martin might be trying to flee or dispose of evidence, and the officers forced entry into the apartment.

¶5    The apartment was small and opened to a hallway that ended in a T intersection. Within a few seconds after the officers entered, Martin appeared, and the officers arrested him "at the T intersection." He was promptly taken out of the apartment where he waited with officers for approximately fifteen minutes for the arrival of a transport vehicle to take him to jail.

¶6    Immediately after Martin's arrest, police escorted Berg and her two children out of the apartment, and a marshal testified that he and other officers then "conduct[ed] a security sweep, protective sweep in the adjacent rooms." The sweep took approximately three-and-a-half minutes, and the purpose of the sweep was for officer safety, "to make sure that no other persons [were] hiding inside the apartment." In one of the bedrooms, the marshal saw what appeared to be an illegal substance "in plain view right below the window."

¶7    After a second officer confirmed that the substance appeared to be heroin, the police obtained Berg's consent to search the home. The search uncovered additional suspected narcotics and more than a thousand dollars in cash.

¶8    At the conclusion of the hearing, the circuit court ruled from the bench that the police had conducted a lawful protective sweep. The circuit court credited the testimony that the officers "looked in places where people could hide" and found that the officers appropriately ensured that the premises were secure while the arrest unfolded. The circuit court also found that Berg gave valid consent to search the apartment after officers conducted the sweep. Accordingly, the circuit court denied Martin's motion to suppress the evidence found in the apartment.

¶9    Following the circuit court's decision, Martin resolved the case short of trial. Pursuant to a plea agreement, he pled guilty to possession with intent to

deliver more than ten grams but less than fifty grams of heroin, and the circuit court dismissed both the allegation that the crime was a second or subsequent offense and the charge of bail jumping. The matter proceeded immediately to sentencing, and the circuit court imposed four years of initial confinement and three years of extended supervision. Martin now appeals, contending that the heroin found under the bedroom window should be suppressed because the protective sweep was unlawful, and the balance of the evidence should be suppressed because the allegedly unlawful sweep tainted Berg's subsequent consent to search the apartment.[1]

## DISCUSSION

¶10  "The Fourth Amendment to the United States Constitution and Article I, Section 11 of the Wisconsin Constitution prohibit unreasonable searches and seizures." *State v. Artic*, 2010 WI 83, ¶28, 327 Wis. 2d 392, 786 N.W.2d 430. Wisconsin courts normally "construe[] the protections of these provisions coextensively." *Id.*

¶11  Whether evidence should be suppressed because police obtained it in violation of the constitutional guarantee against unreasonable searches and seizures presents a question of constitutional fact. *See State v. Phillips*, 218 Wis. 2d 180, 204, 577 N.W.2d 794 (1998). Accordingly, when we review a suppression order, we uphold the findings of fact made by the circuit court unless they are clearly erroneous, but we independently "apply the constitutional

---

[1] A circuit court's order denying a motion to suppress evidence may be reviewed on appeal from a judgment of conviction notwithstanding the defendant's guilty plea. *See* WIS. STAT. § 971.31(10) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

principles to the facts at hand to answer the question of law." *See State v. Dumstrey*, 2016 WI 3, ¶13, 366 Wis. 2d 64, 873 N.W.2d 502 (citation omitted).

¶12    We begin with Martin's claim that the protective sweep was unlawful.  Because Martin does not dispute any factual determinations in regard to this issue, we address solely a question of law.  *See State v. Marten-Hoye*, 2008 WI App 19, ¶5, 307 Wis. 2d 671, 746 N.W.2d 498.

¶13    Martin acknowledges in his brief-in-chief that police may conduct a protective sweep when arresting a suspect in his or her home but he contends that police must have "a reason to believe that there were dangerous individuals in the apartment."  Martin goes on to argue that police lacked "any reasonable belief that any dangerous individuals were in the apartment" in this case because he "surrendered, did not resist, and was unarmed when he was arrested."  We reject this analysis.

¶14    Police conducting an in-home arrest may, "as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *See Maryland v. Buie*, 494 U.S. 325, 334 (1990).  Only if police search further "must [there] be articulable facts, which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors" a dangerous individual. *See id.*  Accordingly, the initial and ultimately determinative question is whether the officers here conducted the sweep within the parameters set forth in *Buie* for a lawful precautionary sweep.  We conclude that the officers complied with the limits that *Buie* prescribes.

¶15     Police arrested Martin in a T intersection at the end of a hallway in his small apartment. The testimony and body camera video reflect that the bedroom where police located contraband during the protective sweep was off the hallway that branched to the right of the intersection. As Martin acknowledges in his reply brief, the bedroom was only "several feet" from the spot where he was taken into custody.

¶16     We have previously recognized that similar facts will support a permissible protective sweep. *See State v. Kruse*, 175 Wis. 2d 89, 96-97, 499 N.W.2d 185 (Ct. App. 1993). There, we were required to determine whether police could permissibly conduct a precautionary sweep of an area eighteen feet from the point of arrest. *See id.* We concluded that eighteen feet was too remote a distance, and in doing so we distinguished the facts from those in a federal case where the defendant challenged the search of a bedroom. *See id.* We explained that in the federal case, "[t]he defendant was arrested in a hallway several feet from the bedroom, which was off the same hallway. Thus, the bedroom in [the federal case] immediately adjoined the area where the defendant was arrested and was an area from which an attack could immediately be launched." *See id.* at 96.

¶17     So too here. The bedroom in which police first saw contraband was a mere several feet from the point of arrest, located off the hallway that branched to the right at the intersection where Martin was seized. The bedroom thus "immediately adjoin[ed]" the place of arrest and constituted a place that might harbor an individual who posed a danger to the officers. *See Buie*, 494 U.S. at 334.

¶18     We are not persuaded by Martin's effort to demonstrate that the relevant distance between the place of arrest and the protective sweep was

enlarged to some unspecified extent because an officer was required to "walk all the way to the back of th[e] bedroom" to see the suspected heroin under the window. The bedroom was adjacent to the place of arrest and within its immediate proximity. *Buie* therefore permitted a precautionary sweep of that area for officer safety. Because the sweep did not run afoul of the ban on unconstitutional searches and seizures, the circuit correctly denied Martin's motion to suppress the evidence discovered during that sweep.

¶19 Martin also sought to suppress the evidence found after Berg consented to a search of the apartment. On appeal, Martin renews his argument that Berg's consent to search was tainted by an unlawful protective sweep preceding that consent. Our conclusion that the sweep was lawful disposes of this argument. For all the foregoing reasons, we affirm.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT RULE 809.23(1)(b)5.